**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **SCOTT RAINEY, THE VETERANS OF** | § | |
| **FOREIGN WARS DISTRICT 4, THE** | § | |
| **AMERICAN LEGION POST 586, and** | § | |
| **THE NATIONAL MEMORIAL LADIES** | § | |
| **Plaintiffs,** | § | |
| | § | **Civil Action No. 4:11-cv-01992** |
| **vs.** | § | **Jury Demanded** |
| | § | |
| **UNITED STATES DEPARTMENT OF** | § | |
| **VETERANS AFFAIRS and ARLEEN** | § | |
| **OCASIO, in her individual capacity,** | § | |
| | § | |
| **Defendants.** | § | |

## FIRST AMENDED COMPLAINT

Scott Rainey, the Veterans of Foreign Wars District 4, The American Legion Post 586, and the National Memorial Ladies (collectively, "Plaintiffs") file this First Amended Complaint against United States Department of Veterans Affairs and Arleen Ocasio in her individual capacity (collectively, "Defendants") for nominal damages, declaratory relief, a preliminary injunction, and a permanent injunction, and allege as follows:

### I.       PRELIMINARY STATEMENT

1.       Defendants are engaging in unlawful religious viewpoint discrimination against Plaintiffs by, *inter alia*, banning certain religious words such as "God" and "Jesus," censoring the content of prayer, and banning religious speech and expression from burial rituals when prior approval for such religious expression is not sought. Defendants are also unlawfully enforcing prior restraints on Plaintiffs' religious speech and expression, and burdening Plaintiffs' religious exercise.

2.      Defendants' actions violate federal law, namely the First Amendment of the United States Constitution and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq*.

## II.      JURISDICTION AND VENUE

3.      This action is brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

4.      Venue is proper in the Southern District of Texas, Houston Division under 28 U.S.C. § 1391.  All of the events giving rise to these claims occurred in this judicial district.

## III.      PARTIES

**A.      Plaintiffs**

5.      Dr. Scott Rainey is the Lead Pastor at Living Word Church of the Nazarene in Houston, Texas.

6.      The Veterans of Foreign Wars District 4 is a nonprofit, volunteer veterans organization that oversees the 17 Veterans of Foreign Wars Posts in Houston.

7.      The American Legion Post 586 is a nonprofit, volunteer veterans organization located at 708 East Parker Road, Houston, TX 77076.

8.      The National Memorial Ladies is a nonprofit, volunteer organization in Houston that honors veterans and their families.

**B.      Defendants**

9.      The United States Department of Veterans Affairs is a federal department that maintains the Houston National Cemetery.

First Amended Complaint – Page 2

10.     Arleen Ocasio is the Director of the Houston National Cemetery, which is located at 10410 Veterans Memorial Drive, Houston, TX 77038.

## IV.     STATEMENT OF FACTS

**A.     Pastor Scott Rainey and the National Cemetery Council for Greater Houston**

11.     Pastor Scott Rainey has been the Lead Pastor at Living Word Church of the Nazarene in Houston, Texas since 2003.

12.     The National Cemetery Council for Greater Houston is a private nonprofit organization.

13.     Annually, the National Cemetery Council for Greater Houston hosts a Memorial Day ceremony and a Veterans Day ceremony at the Houston National Cemetery.

14.     In 2009 and 2010, Pastor Rainey delivered the invocation at the Memorial Day ceremony. During each invocation, Pastor Rainey closed his prayer, as he believes he is instructed to do by his faith, by praying in Jesus' name.

15.     In 2009 and 2010, Pastor Rainey was not asked by the government to submit his prayer for prior approval, to edit his prayer to remove references to Christianity, or to refrain from mentioning the name of Jesus.

16.     This year Pastor Rainey was again invited to give the invocation for the Memorial Day ceremony, but unlike previous years, Arleen Ocasio, Director of the Houston National Cemetery, requested that his prayer be submitted to her for prior approval.

17.     Pastor Rainey complied with this request by emailing a copy of the prayer to Zelner "Stoney" Stone, President of the National Cemetery Council for Greater

First Amended Complaint – Page 3

Houston, on May 19, 2011 (email and prayer attached as Exhibit A), which Mr. Stone forwarded to Director Ocasio (email[1] attached as Exhibit B).  In his prayer, Pastor Rainey included the Lord's Prayer and closed by praying in Jesus' name.

18.     Less than four hours after receiving the email from Mr. Stone, Director Ocasio emailed Pastor Rainey, and copied Jackie Reyes, a Houston National Cemetery employee, and Mr. Stone. In her email, Director Ocasio wrote, "Pastor Reiney [sic], … I have reviewed your attached Memorial Day Prayer/Message, while it is very well written I must ask you to edit it."  Director Ocasio stated that Pastor Rainey's prayer is "specific to one belief" and "on Memorial Day we will be commemorating veterans from all cultures and religious beliefs." Therefore, "[t]he tone of all messages must be inclusive of **all** beliefs, need to be general, and its fundamental purpose should be … non-denominational in nature" (email attached as Exhibit C) (emphasis in original).

19.     After receiving the email from Director Ocasio, Pastor Rainey contacted her by phone. Director Ocasio instructed Pastor Rainey that if he did not remove the references in his prayer that are specific to one religion that he would not be allowed to deliver the Memorial Day invocation at the Houston National Cemetery.

20.     On May 24, 2011, a demand letter was sent to U.S. Secretary of Veteran Affairs Eric Shinseki and Director Ocasio, informing them of the relevant law and requesting that they inform Liberty Institute in writing by 5:00 p.m. on Wednesday, May 25, 2011 that Pastor Rainey can provide the invocation without removing references to his religion (May 24, 2011 demand letter attached as Exhibit D).

---

[1] Evelyn L. Stone is Stoney's wife.  He used her email address for these communications.

First Amended Complaint – Page 4

21.     The following day, May 25, 2011, Jack H. Thompson, Deputy General Counsel for the Department of Veterans Affairs, responded to the demand letter via email.  He stated that the policy at issue is "viewpoint-neutral" and "appropriate," and that "the tone of [Pastor Rainey's] remarks must therefore be inclusive."  He went on to state that Pastor Rainey must notify Director Ocasio by 3 p.m. the following day if "he agrees to modify the message he wishes to deliver in compliance with [Director Ocasio's] directive to him...." (email attached as Exhibit E).

22.     On May 26, 2011, Pastor Scott Rainey filed a complaint and a motion for a temporary restraining order in the U.S. District Court for the Southern District of Texas, Houston Division, seeking that the Defendants be enjoined from censoring the contents of his prayer and religious expression at the May 20, 2011 Memorial Day ceremony, hosted by the National Cemetery Council for Greater Houston.

23.     On May 26, 2011, the Court enjoined Defendants and all those acting in concert with them from dictating the content of speeches, including prayer, at the May 20, 2011 Memorial Day ceremony hosted by the National Cemetery Council for Greater Houston.

24.     On May 27, 2011, at the hearing on Pastor Rainey's motion for temporary restraint, Jeff Mateer, lead attorney for Pastor Rainey, stated that since filing the lawsuits, other reports of religious discrimination at Houston National Cemetery, including the removal of Bibles from the Houston National Cemetery chapel, have come to his attention.

25.     This Court gave attorneys for Pastor Rainey 30 days to investigate the additional claims and set a pretrial conference for June 28, 2011.

First Amended Complaint – Page 5

26.     On June 1, 2011, at 10:27 a.m. CT (11:27 a.m. ET), Assistant U.S. Attorney Fred Hinrichs emailed Mr. Mateer and copied Deanna Livingston from the U.S. Department of Veterans Affairs Office of Regional Counsel.  In the email, Mr. Hinrichs stated that "[i]f there is anything to the bible rumors, Deanna is on it."  (Email attached as Exhibit F.)

27.     On June 1, 2011, at 10:59 a.m. CT, Mr. Mateer responded to Mr. Hinrichs's email and copied Ms. Livingston.  In his email, Mr. Mateer stated, "We are still investigating matters at the Houston National Cemetery.  These include the removal of Bibles from the chapel and the closing of the chapel.  Any information you could provide on these issues would be helpful. … If you find out anything on the Bibles or the closing of the chapel, please let me know." (Email attached as Exhibit G.)

28.     Neither Mr. Hinrichs nor Ms. Livingston responded to Mr. Mateer's June 1, 2011 email.

29.     Exactly one week later, on June 8, 2011, Mr. Mateer sent a follow-up email to Ms. Livingston and copied Mr. Hinrichs.  He stated, "Following up on my email below, were you able to confirm whether or not the Bibles have been removed from the chapel at the cemetery?  We have now heard this from a few different individuals. … Please advise." (Email attached as Exhibit H.)

30.      Neither Ms. Livingston nor Mr. Hinrichs responded to Mr. Mateer's June 8, 2011 email.

31.     On June 17, 2011, Mr. Hinrichs filed a Motion to Dismiss at Moot, asking this Court to dismiss the case.

First Amended Complaint – Page 6

32.     During its investigation, Liberty Institute confirmed that Houston National Cemetery officials ("Government Officials"), including Director Ocasio, are discriminating against the private religious speech and expression of the Veterans of Foreign Wars District 4, The American Legion Post 586, and the National Memorial Ladies. Liberty Institute also confirmed that the Cemetery chapel has been closed and its Bible and cross were removed.

33.     On June 23, 2011, at 9:19 a.m., Leslie Parks, paralegal to Mr. Mateer, sent Mr. Hinrichs and Ms. Livingston a legal demand letter on behalf of Plaintiffs, stating that the Veterans of Foreign Wars District 4, The American Legion Post 586, and the National Memorial Ladies retained Liberty Institute in connection with Defendants' unlawful censorship of their private religious speech and expression. The letter requested that attorneys for Defendants advise Mr. Mateer in writing by 5:00 p.m. on Friday, June 24, 2011 that Defendants will no longer engage in religious viewpoint discrimination against the Veterans of Foreign Wars District 4, The American Legion Post 586, and the National Memorial Ladies (Email and June 23, 2011 demand letter attached as Exhibit I.)

34.     On June 23, 2011, at 10:10 a.m., Mr. Hinrichs responded to Ms. Parks and copied Mr. Mateer and Ms. Livingston.  In his email, he stated "Ms. Livingston will be looking into these new claims and will hopefully have a response by early next week." (Email attached as Exhibit J.)

35.     On June 24, 2011, at 11:08 a.m., Mr. Mateer responded to Mr. Hinrichs's email and copied Ms. Livingston.  He stated, "While we are hopeful that the government will resolve these matters immediately, we are proceeding with the drafting of an

First Amended Complaint – Page 7

Amended Complaint and will plan on filing it next week if we are unable to come to an amicable resolution." (Email attached as Exhibit K.)

36.    Pursuant to the Temporary Restraining Order, on May 30, 2011, Pastor Rainey delivered the invocation at the Memorial Day ceremony and recited the Lord's Prayer and prayed in Jesus' name.

37.    Pastor Rainey would like to deliver a religious message or pray at future National Cemetery Council for Greater Houston Memorial Day or Veterans Day ceremonies at the Houston National Cemetery. Additionally, Pastor Rainey would like to deliver a religious message or pray at future burial services held at the Houston National Cemetery.

38.    In light of the Defendants' widespread and consistent practice of discriminating against private religious speech, Pastor Rainey is fearful that Government Officials, including Director Ocasio, will censor his private religious speech and expression in the future.

**B.    The Veterans of Foreign Wars District 4**

39.    The Veterans of Foreign Wars of the United States (the "VFW") is a nonprofit organization formed in 1899. It is "the world's oldest overseas war veterans' organization." Congress chartered the VFW in 1936 as a federal corporation with "fraternal, patriotic, historical, charitable, and educational" purposes. 36 U.S.C.S. § 230102 (2011).

40.    The VFW's current mission is threefold: "To foster camaraderie among United States veterans of overseas conflicts. To serve our veterans, the military, and our communities. To advocate on behalf of all veterans."

First Amended Complaint – Page 8

41.     The VFW has 7,600 Posts, which constitute its local chapters, and 1.48 million members.

42.     The Veterans of Foreign Wars District 4 ("VFW District 4") is a separate nonprofit organization that oversees the 17 VFW Posts in Houston.

43.     Historically, volunteer honor guards at Houston National Cemetery were arranged as follows: The family of the deceased veteran worked with a private funeral home to arrange the military honors. If the family requests that the VFW District 4 burial team, or any other volunteer burial team such as The American Legion Post 586 burial team, performs military honors, the funeral home contacted VFW District 4 or The American Legion Post 586 directly. A private family arranged to have a private volunteer burial team perform military honors through a private funeral home.

44.     It was only after Director Ocasio's arrival at the Houston National Cemetery that the government inserted itself into this process and began discriminating against religious speech and expression.

45.     For at least 30 years, the VFW District 4 burial team, at the request of the family of the deceased, has honored veterans by performing the VFW burial ritual during private burial services at Houston National Cemetery (VFW burial ritual attached as Exhibit L[2]). VFW District 4 follows the official VFW Ritual from 1993,[3] which was written and approved by the VFW National Council of Administration.  The VFW burial

---

[2] Traditionally, the VFW District 4 burial team would follow pages 1-3 of the ritual. Page 4 would only be recited if a clergy member was not present to provide a funeral service.

[3] The 2010 VFW burial ritual was attached to the June 23, 2011 demand letter.  The VFW District 4 burial team actually follows the 1993 ritual, which is slightly different from the 2010 ritual.

ritual includes, *inter alia*, a pre-written prayer by the VFW District 4 Chaplain and religious speech.

46.     On at least three separate occasions, Government Officials informed VFW District 4 that prayer and religious speech could no longer be included in the burial ritual unless the family submits a specific prayer or message in writing to Director Ocasio for her approval.

47.     On the morning of May 5, 2011, Director Ocasio instructed incoming Commander Inge Conley, Junior Vice Commander Jay Sanders, and Commander Julia Rosenbaum, that prayer/religious speech could no longer be included in the VFW burial ritual unless the family of the deceased submits the prayer/religious speech to Director Ocasio in writing for her approval.

48.     During the afternoon on May 5, 2011, during training for the VFW District 4 burial team, Director Ocasio again told incoming Commander Inge Conley that the burial team was prohibited from including prayer/religious speech in its ritual unless the family pre-submits the prayer/religious speech to her in writing.

49.     On May 19, 2011, Government Official Jose Henriquez told VFW District 4 Honor Guard Commander Gus Sivcoski, Honor Guard Junior Vice Commander Nobleton Jones, and VFW District 4 Chaplain Felix Sivcoski that they were allowed to say the Lord's Prayer and the 23rd Psalm, but no other prayers or religious speech. Mr. Henriquez informed Chaplain Sivcoski that the word "God" was forbidden, which is not included in the Lord's Prayer or the 23rd Psalm. Mr. Henriquez then came back and told VFW District 4 burial team members that no prayers or religious messages are allowed, including the Lord's Prayer and the 23rd Psalm, absent prior approval.

First Amended Complaint – Page 10

50.     The VFW District 4 burial team has a 30-year history of including prayer and religious speech in its ritual and has never been asked to remove such references until shortly after Director Ocasio joined the Houston National Cemetery.

51.     The VFW District 4 burial team has not included prayer or religious speech in its burial ritual since being instructed by Director Ocasio and other Government Officials that such speech and prayer are prohibited, absent prior approval.

52.     If the family of the deceased veteran requests that the VFW District 4 burial team perform military honors during the funeral, it is arranged through the funeral home. VFW District 4 therefore does not have any direct contact with the family prior to the funeral and does not have an opportunity to inform the family members that they may make a written request to Director Ocasio if they wish for the VFW to include prayer/religious speech in the ceremony.  Even if the VFW District 4 burial team had the opportunity to inform families of its complete ritual, which includes prayer and religious speech, Houston National Cemetery official policy prohibits them from doing so.

53.     American Heritage Funeral Home, which sits next to the Houston National Cemetery and specializes in veterans' funerals, was instructed by Government Officials that the VFW District 4 burial team is forbidden from including prayer or religious messages in its ritual unless the family pre-submits the prayer or religious message to Director Ocasio in writing.

54.     Larry Matthews, Director of American Heritage Funeral Home, requested that he be permitted to inform families that they could have the VFW Chaplain include prayer or a religious message if they submitted it to Director Ocasio in writing.

First Amended Complaint – Page 11

Government Officials, however, told Mr. Matthews that the private funeral home was not allowed to present that option to the families.

55.     Houston National Cemetery official policy governing volunteer honor guards, such as the VFW District 4 and The American Legion Post 586 burial teams, implemented by Director Ocasio on March 15, 2011, requires that the volunteer honor guards must delete all religious elements from their rituals, unless the family specifically requests otherwise. The policy states that "funeral military honors should consist only of the core elements: the folding of the United States Flag; presentation of the flag to the veteran's family; playing of traditional Taps; and a rifle salute. Additions to these core elements can only be made at the request of the deceased's survivor(s)." (Houston National Cemetery Honor Guard Guidelines ¶ 4.a. attached as Exhibit M.)

56.     Houston National Cemetery official policy governing volunteer honor guards additionally states that if the family of the deceased veteran has a member of the clergy recite a prayer or read from scripture that the volunteer honor guard may not also read scripture or recite a prayer.  Guidelines ¶ 7.

57.     Houston National Cemetery official policy governing volunteer honor guards further restricts the speech of the honor guards by stating that they are forbidden from providing the texts of optional recitations for the committal service to the deceased's survivors for consideration.  Guidelines ¶ 8.b.

58.     When the VFW District 4 burial team performs military honors for a veteran's funeral, a Government Official is now present to monitor what is spoken; before Director Ocasio took over the Houston National Cemetery, Government Officials did not monitor the burial teams' speech.

First Amended Complaint – Page 12

59.     For approximately two and a half years, Junior Vice Commander Nobleton Jones recited the following to family members of the deceased as he handed them the discharged shell cases from the gun salute: "On behalf of the United States of America, a grateful nation, and the Veterans of Foreign Wars, I present you with these shell cases from the shots that were fired to honor our departed comrade. We ask that God grant you and your family grace, mercy, and peace."

60.     After a burial ceremony on May 16th, 2011, the Government Official monitoring the funeral instructed Mr. Jones that he was no longer allowed to recite his message as he hands the discharged shells to the family, presumably because his message includes the word "God."

61.     Since that time, Junior Vice Commander Jones has not recited anything when handing the family of the deceased veteran the discharged shell cases.

**C.    The American Legion Post 586**

62.     The American Legion is the nation's largest veterans service organization. Incorporated by Congress in 1919, 36 U.S.C. §21701 (2011), it is a nonpartisan, nonprofit organization founded on four pillars: Veterans Affairs and Rehabilitation, National Security, Americanism, and Children and Youth. The American Legion currently has 2.4 million members in 14,000 posts worldwide.

63.     The American Legion Post 586 has been performing its burial ritual, which is prescribed by the The American Legion Officer's Guide Manual of Ceremonies, at Houston National Cemetery for at least 20 years.  (*See* The American Legion Officer's Guide § 3, 38-45, attached as Exhibit N.)  The ritual includes, *inter alia*, religious speech such as prayer.

64.     Like the VFW District 4 burial team, The American Legion Post 586 burial team was told approximately two months ago by a Government Official that it could no longer include religious speech, including prayer, in its ritual, unless it was specifically requested and submitted to Director Ocasio in writing by the family of the deceased.

65.     Since that time, The American Legion Post 586 burial team has not included religious speech or prayer in its ritual when performing military honors for a veteran.

**D.      The National Memorial Ladies**

66.     The National Memorial Ladies is a private, nonprofit organization that was founded in 2009.

67.     The National Memorial Ladies' mission is to ensure that no soldier is ever buried alone. To that end, the group attends most veterans' funerals at Houston National Cemetery, approximately 60 a week, to honor veterans and console their families.

68.     If the family members of the deceased veteran attend the funeral, the National Memorial Ladies will hand them a condolence card with both a printed and handwritten message (example printed card attached as Exhibit O).

69.     Previously, the valediction on the condolence cards was "God Bless." About a year ago, Director Ocasio instructed National Memorial Ladies President Cheryl Whitfield that the words "God" and "Jesus" are forbidden and that "God Bless" could not be written in the condolence cards.

70.     Director Ocasio also instructed Ms. Whitfield that the National Memorial Ladies volunteers could not use religious words such as "God" or "Jesus," or speak a

First Amended Complaint – Page 14

religious message when talking directly to veterans' families on Houston National Cemetery grounds.

71.     Since that time, the members of the National Memorial Ladies have removed "God Bless" from the condolence cards and have refrained from speaking a religious message or using religious words such as "God Bless" or "Jesus" on Houston National Cemetery grounds.

**E.     Houston National Cemetery Chapel**

72.     Before Director Ocasio's arrival at Houston National Cemetery, the Cemetery chapel ("Chapel") was open during Cemetery operating hours.

73.     The Chapel was used for burial ceremonies and served as a place for individuals to pray, reflect, or mediate on the sacrifices of our veterans.  It included a Bible and a cross.

74.     Shortly after Director Ocasio's arrival at the Cemetery, approximately two years ago, and before Cemetery construction commenced, the Chapel was closed. The doors remain locked during Houston National Cemetery operating hours, the cross and the Bible have been removed, and the Chapel bells, which tolled at least twice a day, are now inoperative.

75.     Director Ocasio only unlocks the Chapel doors when meetings or training sessions are held at the building.  Furthermore, it is no longer called a "chapel" but a "meeting facility." The back pews are filled with boxes, making the building appear more like a storage facility than the Chapel for which it was originally intended.

First Amended Complaint – Page 15

## V.     CAUSES OF ACTION

**A.     COUNT ONE: Violation of the Free Speech Clause of the First Amendment —Unlawful Viewpoint Discrimination  (42 U.S.C. § 1983)**

76.     Plaintiffs incorporate and adopt by reference for all purposes each and every allegation in the preceding paragraphs and sections.

77.     Plaintiffs are private entities that engage in private speech and expression on Houston National Cemetery grounds.

78.     Defendants are censoring Plaintiffs' speech because it advocates a specific viewpoint, namely, a Christian or religious viewpoint.

79.     Defendants specifically told Plaintiffs that religious words like "God" or "Jesus" are banned and that prayer and religious messages are prohibited from burial ceremonies, absent prior approval.

80.      Defendants do not object to any other part of Plaintiffs' speech.

81.     The government is forbidden from denying access to a speaker solely to suppress the point of view he or she espouses on an otherwise includable subject.

82.     The government is forbidden from engaging in viewpoint discrimination, including religious viewpoint discrimination, unless it can show that it is advancing a compelling interest by the least restrictive means. This is true regardless of the type of forum.

83.     The government can advance no compelling interest in censoring Plaintiffs' prayer and religious speech. In fact, by censoring their prayer and religious speech, the government is acting unlawfully.

84.     Defendants' violations of Plaintiffs' rights caused and will cause Plaintiffs to suffer irreparable injury.

First Amended Complaint – Page 16

**B.     COUNT TWO: Violation of the Free Speech Clause of the First Amendment —Unlawful Prior Restraint   (42 U.S.C. § 1983)**

85.     Plaintiffs incorporate and adopt by reference for all purposes each and every allegation in the preceding paragraphs and sections.

86.     By preventing Plaintiffs from speaking a religious message — and from even presenting the option to families that they may request the inclusion of a religious message, including prayer, in the burial ceremonies — Defendants are imposing an unlawful prior restraint on Plaintiffs' speech.

87.     The Plaintiffs' religious speech is not overwhelmingly likely to fall outside the protection of the First Amendment, and will not surely result in direct, immediate, and irreparable damage. To the contrary, it is protected First Amendment expression. Therefore, Defendants are prohibited from imposing a prior restraint on Plaintiffs' speech.

88.     Defendants' violations of Plaintiffs' rights caused and will cause Plaintiffs to suffer irreparable injury.

**C.     COUNT THREE: Violation of the Establishment Clause of the First Amendment  (42 U.S.C. § 1983)**

89.     Plaintiffs incorporate and adopt by reference for all purposes each and every allegation in the preceding paragraphs and sections.

90.     The Establishment Clause prohibits government hostility towards religion. The government is forbidden from imposing a "religion of secularism."

91.     Plaintiffs have demonstrated an unlawful hostility toward religion by, *inter alia*, closing down the Chapel, banning certain religious words such as "God" and "Jesus," prohibiting volunteer honor guards from including religious speech or prayer if a clergy member is present, preventing volunteer honor guards and funeral homes from

First Amended Complaint – Page 17

informing families that they may request the inclusion of religious speech or prayer in burial ceremonies, and prohibiting volunteer honor guards from including religious speech or prayer in the burial ceremonies unless the family pre-submits the specific religious speech or prayer in writing to Defendants.

92.     Defendants instructed Plaintiffs to edit the contents of private prayer, to remove prayer entirely, or required that families pre-submit specific prayers in writing before Plaintiffs could recite them.

93.     Defendants further stated that certain prayers could not be specific to one religion.

94.     Defendants conditioned participating in ceremonies and other events on Houston National Cemetery grounds on editing or removing private prayer or other religious expression.

95.     It is a cornerstone principle of the Establishment Clause that the government may not compose prayer.   The government is forbidden from either proscribing or prescribing religious expression.

96.     Defendants therefore violated the Establishment Clause by attempting to edit Plaintiffs' speech and prayer to remove some or all religious elements.

97.     Our nation has historically included prayer in its ceremonies, including ones that reference our Judeo-Christian heritage. The use of such prayer does not violate the Establishment Clause.

98.     Defendants' violations of Plaintiffs' rights caused and will cause Plaintiffs to suffer irreparable injury.

**D.     COUNT FOUR: Violation of the Free Exercise Clause of the First Amendment (42 U.S.C. § 1983)**

First Amended Complaint – Page 18

99.     Plaintiffs incorporate and adopt by reference for all purposes each and every allegation in the preceding paragraphs and sections.

100.    By censoring Plaintiffs' private religious speech and prayer, which they believe is a fundamental religious practice when honoring deceased veterans, Defendants are burdening their religious exercise.

101.    Defendants' written and oral policies single out religious speech and expression, and are motivated by a desire to remove religion from the Houston National Cemetery.

102.    Defendants' actions are only constitutional if it can be shown that they advance a compelling governmental interest by the least restrictive means.

103.    The government can advance no compelling interest in censoring Plaintiffs' prayer and religious speech. In fact, by censoring their prayer and religious speech, the government is acting unlawfully.

104.    Defendants' violations of Plaintiffs' rights caused and will cause Plaintiffs to suffer irreparable injury.

**B.     COUNT FIVE: Violation of the Religious Freedom Restoration Act (42 U.S.C. § 2000bb *et seq.*)**

105.    Plaintiffs incorporate and adopt by reference for all purposes each and every allegation in the preceding paragraphs and sections.

106.    By censoring Plaintiffs' private religious speech and prayer, which they believe is a fundamental religious practice when honoring deceased veterans, Defendants are burdening their religious exercise.

First Amended Complaint – Page 19

107.    By making Plaintiffs choose between censoring their prayer and speech, which violates their religious beliefs, and participating in the Memorial Day Ceremony, the government is creating a substantial burden on their religious exercise.

108.    The government has no compelling interest in censoring Plaintiffs' religious speech.  In fact, by censoring their prayer the government is acting unlawfully.

109.    Defendants' violations of Plaintiffs' rights caused and will cause Plaintiffs to suffer irreparable injury.

## VI.    DECLARATORY RELIEF

110.    Plaintiffs incorporate and adopt by reference for all purposes each and every allegation in the preceding paragraphs and sections.

111.    Pursuant to 28 U.S.C. § 2201, Plaintiffs seeks a declaration from the Court that the Defendants' actions as described herein violate federal law.

## VII.    PRELIMINARY AND PERMANENT INJUNCTION

112.    Plaintiffs incorporate and adopt by reference for all purposes each and every allegation in the preceding paragraphs and sections.

113.    Plaintiffs seek a preliminary and permanent injunction that all Defendants, in their official and individual capacities, their officers, agents, servants, employees, attorneys as well as those in active concert or participation with them shall:

> a.   Establish a non-discriminatory written policy that will allow Plaintiffs and others lawfully on Houston National Cemetery grounds to engage in constitutionally protected speech and expression, including but not limited to religious speech and expression such as prayer, without regard to its content or viewpoint, and shall not establish or enforce any restrictions

First Amended Complaint – Page 20

that infringe upon any private speech or expression, including but not limited to religious speech such as prayer;

b. Not discriminate against any constitutionally protected speech and expression, including but not limited to religious speech and expression such as prayer, at the Houston National Cemetery;

c. Grant Plaintiffs and others wishing to engage in constitutionally protected speech and expression, including but not limited to religious speech and expression, use and access to the Houston National Cemetery on the same terms and conditions applicable to all other users;

d. Not discriminate against any religious or secular use or activity at the Houston National Cemetery;

e. Not dictate the content of Plaintiffs' speech and expression — whether denominated prayers or otherwise — at all future Memorial Day ceremonies, Veterans Day ceremonies, or any other event at the Houston National Cemetery;

f. Not dictate the content of Plaintiffs' speech and expression – whether denominated prayers or otherwise – at all future funeral and burial services at the Houston National Cemetery;

g. Not ban, regulate, or otherwise interfere with the religious speech and expression of volunteer honor guards, including but not limited to Veterans of Foreign Wars District 4 and The American Legion Post 586;

First Amended Complaint – Page 21

h. Not ban religious words, including but not limited to "God" and "Jesus," in condolence cards or any other written document distributed by Plaintiffs or others lawfully on Houston National Cemetery grounds;

i. Not ban religious words including but not limited to "God" and "Jesus" in the oral communication of Plaintiffs and others lawfully on Houston National Cemetery grounds;

j. Not implement prior restraints on speech and expression, including religious speech and expression, of Plaintiffs or others lawfully on Houston National Cemetery grounds;

k. No longer require that religious speech and expression, including but not limited to religious speech and expression at private burial ceremonies, be pre-submitted to government officials;

l. Allow families and private funeral homes to plan burial ceremonies, including but not limited to requesting volunteer honor guards, without requiring that certain speech or requests for certain speech be submitted to the government;

m. No longer prohibit volunteer honor guards, including but not limited to VFW District 4 and The American Legion Post 586 burial teams, from including religious speech or expression in their ceremonies if a member of the clergy includes religious speech or expression, including but not limited to prayer and reciting scripture, in his or her speech at a burial service;

First Amended Complaint – Page 22

n.  No longer prevent private actors, including but not limited to Plaintiffs and funeral homes, from informing families that religious speech and expression and other recitations may be included in burial services;

o.  Not condition participation in any event or ceremony on Houston National Cemetery grounds on foregoing constitutionally protected speech and expression, including but not limited to religious speech and expression;

p.  Not have employees of Houston National Cemetery monitor the speech and expression of private actors on cemetery grounds;

q.  Keep the Chapel open and unlocked during normal operating hours;

r.  Allow the use of the Chapel for private religious purposes, and allow Plaintiffs and others lawfully on Houston National Cemetery grounds access;

s.  Return the Bible and cross to the Chapel; and

t.  Not Retaliate or take any adverse action against Plaintiffs and their members for engaging in speech and expression, including religious speech such as prayer, and shall not ban Plaintiffs and their members from the Houston National Cemetery for reasons related to their speech and expression.

## VIII.   NOMINAL DAMAGES

114.   Plaintiffs incorporate and adopt by reference for all purposes each and every allegation in the preceding paragraphs and sections.

115.   Plaintiffs seek nominal damages for Defendants' violations of the law as more fully described herein.

First Amended Complaint – Page 23

## IX. ATTORNEYS FEES AND COSTS

116.    Plaintiffs incorporate and adopt by reference for all purposes each and every allegation in the preceding paragraphs and sections.

117.    Plaintiffs, as the prevailing parties, will seek an award of attorneys fees and costs against Defendants pursuant but not limited to 42 U.S.C. § 1988.

## X.    JURY TRIAL

118.    Plaintiffs demand a jury trial on all issues triable to a jury.

## XI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court grant the following relief:

119.    A preliminary injunction as requested herein;

120.    A permanent injunction as requested herein;

121.    A declaration that Defendants' conduct violates federal law;

122.    An award of nominal damages;

123.    An award of attorneys fees and costs; and

124.    Any further relief this Court deems just and proper.

Dated this 27th day of June, 2011.

Respectfully submitted,


/s/ Jeffrey C. Mateer
Jeffrey C. Mateer
Attorney-in-Charge
Texas Bar No. 13185320
Southern District of Texas Bar No. 38345
Hiram S. Sasser III
Texas Bar No. 24039157
Erin E. Leu
Texas Bar No. 24070138
LIBERTY INSTITUTE
2001 Plano Parkway, Suite 1600
Plano, Texas 75075
Telephone: (972) 941-4444
Fax: (972) 941-4457
Email: jmateer@libertyinstitute.org

John D. Walker
Texas Bar No. 00794809
3902 Cimarron way
Magnolia, TX 77354
Tel: 281-252-0222
Fax: 281-259-9596
Email: jwalker@jdwlaw.com


*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was electronically served through the Court's CM/ECF system, or otherwise mailed via First Class Mail, on this 27th day of June, 2011, to the following parties or attorneys of record:

Jose Angel Moreno
Fred T. Hinrichs
Daniel David Hu
U.S. Attorney's Office
P.O. Box 61129
Houston, Texas 77208

*Counsel for Defendants*

/s/ Jeffrey C. Mateer
Jeffrey C. Mateer

First Amended Complaint – Page 26